| CASE NO. CV03500192 | D5 CM | SUMMONS NO. 3737931 |
|---|---|---|

Rule 4 (B) Ohio

Rules of Civil Procedure

MOURAD EL-MAHDY
vs
UNIVERSITY HOSPITALS OF CLEVELAND ET AL

PLAINTIFF

DEFENDANT

# SUMMONS

BERTHA STEWART
KAISER PERMANENTE
12301 SNOW ROAD
PARMA OH 44130-0000

You have been named defendant in a complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

JIHAD SMAILI
1360 WEST 9TH STREET, STE 310

CLEVELAND, OH 44113-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

NANCY A FUERST
Do not contact judge. Judge's name is given for attorney's reference only.

GERALD E. FUERST
Clerk of the Court of Common Pleas



| DATE May 1, 2003 | By_____ Deputy |
|---|---|

COMPLAINT FILED 04/29/2003



BERTHA STEWART
KAISER PERMANENTE
12301 SNOW ROAD
PARMA OH 44130-0000

# EXHIBIT A

CMSN130

COPY

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Mourad El-Mahdy<br>4070 Park Fulton Oval, #1132<br>Cleveland, Ohio 44144,<br><br>    Plaintiff,<br><br>V.<br><br>University Hospitals of Cleveland<br>Serve: Statutory Agent<br>Janet L. Miller<br>10524 Euclid Ave., Suite 1100<br>Cleveland, Ohio 44106<br><br>Margaret Straight<br>University Hospitals of Cleveland<br>11100 Euclid Ave.<br>Cleveland, Ohio 44106<br><br>Denise Collins<br>University Hospitals of Cleveland<br>11100 Euclid Ave.<br>Cleveland, Ohio 44106<br><br>Kaiser Permanente Corporation<br>Serve: Statutory Agent<br>Kaiser Foundation Health Plan of Ohio<br>1001 Lakeside Ave., Suite 1200<br>Cleveland, Ohio 44114<br><br>Bertha Stewart<br>Kaiser Permanente<br>12301 Snow Road<br>Parma, Ohio 44130<br><br>Joan Gerbasi<br>University Hospitals of Cleveland<br>11100 Euclid Ave.<br>Cleveland, Ohio 44106<br><br>    Defendants. | Case No. _____<br><br>Judge _____<br><br>**Complaint**<br><br><u>Jury Demand Endorsed Hereon</u> |

NOW COMES Plaintiff Mourad El-Mahdy (hereinafter "Plaintiff El-Mahdy"), by and through undersigned counsel, and hereby makes the following allegations as his Complaint:

## Personal Jurisdiction and Venue

1. Plaintiff El-Mahdy resides in the City of Cleveland, County of Cuyahoga, Ohio, along with his wife are citizens of the United States of America, and have resided in same throughout the factual allegations of this Complaint. Defendant University Hospitals of Cleveland (hereinafter "University Hospitals") is a nonprofit corporation located at 11100 Euclid Avenue, Cleveland, Cuyahoga County, Ohio. Defendant Kaiser Permanente is a corporation licensed to do business in Cuyahoga County, Ohio with a principle place of business at 12301 Snow road, Cuyahoga County, Parma, Ohio 44130. All of the factual allegations herein took place at 11100 Euclid Avenue, Cleveland, Ohio. All Defendants were employed at all times relevant to the instant action by University Hospitals. All Defendants are being sued in their personal, professional and employment capacities.

## Allegations of Fact

2. Paragraph 1 is hereby incorporated by reference as if fully rewritten hereon.

3. During all times relevant herein, and to the present time, Mr. El-Mahdy was and is a devout Muslim, as well as being of the Arab race and a person of Egyptian descent.

4. On or about December 20, 1999, University Hospitals hired Mr. El-Mahdy to perform laboratory work, i.e. Process specimens. Plaintiff El-Mahdy is a certified phlebotomist holding a bachelor in biology with extensive experience in the medical and laboratory fields. During the time of his hiring, and throughout his employment with University Hospitals, Mr. El-Mahdy was

2

qualified to perform his duties for which he was hired. On August 16, 2001, Plaintiff El-Mahdy was employed by Defendant University Hospitals as a Specimen Processor.

5. In the specimen processing department in which Mr. El-Mahdy worked at University Hospitals, he was supervised by Ms. Margaret Straight (hereinafter "Ms. Straight"), who is still employed by University Hospitals.

6. At the time that Mr. El-Mahdy worked at University Hospitals, University Hospitals also employed Denise Collins (hereinafter "Ms. Collins") in the Human Resources Department and she is still employed there today.

7. Joan Gerbasi, an attorney and psychiatrist for University Hospitals, issued her report on Mr. El-Mahdy's fitness for duty without informing him as to the nature of such interview (which was to be anger management), and, soon thereafter, Mr. El-Mahdy was wrongfully discharged from employment by University Hospitals in October of 2001, and thereafter instituted charges against University Hospitals. Joan Gerbasi, during her interview of Mr. El-Mahdy, questioned Mr. El-Mahdy regarding terrorism, weapons, his Arab/Muslim culture, suicide bombings, etc., and relied upon a file provided by Margaret Straight, which was not Mr. El-Mahdy's personnel file, and relied solely upon Margaret Straight's statements to her regarding Mr. El-Mahdy.

8. Since 1998, Mr. El-Mahdy has been associated with Kaiser Permanente (hereinafter "Kaiser") by way of on-call employment.

9. Throughout his employment with Kaiser, Mr. El-Mahdy was qualified to do the type of work for which he was hired.

10. In March of 2002, an agent of Kaiser requested that Mr. El-Mahdy apply for a full and/or part-time position with Kaiser.

3

11. Mr. El-Mahdy was not hired for a full and/or part time position by Kaiser, and was told by Kaiser in June of 2002 that Kaiser would no longer be using on-call employees because of budget concerns. That notwithstanding, Kaiser called Mr. El-Mahdy into work on September 2, and 5, 2002.

12. At the time that Mr. El-Mahdy worked at Kaiser, Kaiser also was employing Ms. Bertha Stewart (hereinafter "Ms. Stewart") as their Regional Laboratory Director, and she is still so employed there today.

13. On September 5, 2002, Mr. El-Mahdy was told by Kaiser and Ms. Stewart not to return to work.

14. In September, 2002 and October, 2002, Mr. El-Mahdy applied for a laboratory position with Kaiser, but was not hired.

**FIRST CAUSE OF ACTION**
(A) Violation of Ohio's Fair Employment Practices Law
Ohio Rev. Code Section 4112 et seq. Unlawful Discrimination On The Bases of Religion and National Origin By University Hospitals, Margaret Straight, Joan Gerbasi, and Denise Collins In Violation of Ohio Rev. Code Section 4112.02.;
(B) Unauthorized Disclosure of Privileged Medical Information

15. Paragraphs 1-14 are hereby incorporated by reference as if fully rewritten hereon, and further states the following as his allegations:

16. Defendants fall under the purview of Ohio's Fair Employment Practices Law pursuant to Ohio Rev. Code Section 4112 et seq. since Defendants employed four or more individuals within this State. Defendants wrongfully discharged Mr. El-Mahdy and otherwise discriminated against him, without just cause, with respect to his compensation, terms, conditions or privileges of employment, because of his race, color, religion and national origin, and limited, segregated and/or classified his employment in a way which deprived him of employment opportunities, or

4

otherwise adversely affect his status as an employee, because of his race, color, religion and national origin. As a direct result of Defendants' action, collective and/or otherwise, Individual Defendants fall under the purview of Ohio's Fair Employment Practices Law pursuant to Ohio Rev. Code Section 4112 et seq. Genaro v. Central Transport, Inc. (1997), 80 Ohio St. 3d 1414; Plotner v. Swanton Local Board of Education, 85 F. Supp. 2d 747 (N.D. Ohio 2000). At all relevant times, Defendants acted with malice and reckless indifference to the statutorily protected rights of Mr. El-Mahdy in violation of Ohio Rev. Code Section 4112 et seq. As for his causes of action against Defendants regarding their conduct herein alleged, Mr. El-Mahdy alleges that Defendants did intentionally, willfully and without justification deprive Mr. El-Mahdy of his rights, privileges and immunities secured to him by the Constitution of the United States, the Ohio Constitution and the laws of State of Ohio, particularly his right to be free from unlawful employment practices and employment discrimination as provided by Ohio Rev. Code Section 4112 et seq. Mr. El-Mahdy has suffered damages which continue to accrue and for any and all back pay, front pay, compensatory and punitive damages by law, including interest and attorneys' fees, made and provided. During Mr. El-Mahdy's employment, Ms. Straight and other employees from the Specimen Processing Department at University Hospitals had knowledge of Mr. El-Mahdy's religion and national origin.

17. Throughout Mr. El-Mahdy's employment, Mr. El-Mahdy's coworkers harassed, intimidated and agitated him on the basis of his religion and national origin.

18. Ms. Straight had knowledge that Mr. El-Mahdy's coworkers did harass, intimidate and agitate him on the basis of his religion and national origin, yet failed to take action to correct such behavior and/or reprimand his coworkers.

5

19. Throughout his employment, and at the time of his initial hiring, Mr. El-Mahdy was paid less by University Hospitals than other coworkers with same or lesser experience on account of his religion and national origin.

20. Mr. El-Mahdy expressed his pay rate concerns to Ms. Straight and to University Hospitals, but was told that he would not be considered for a pay increase.

21. After Mr. El-Mahdy's complaints regarding his pay rate concerns, at least one of his coworkers made false administrative complaints against Mr. El-Mahdy.

22. In October, 2001, Ms. Straight offered one of Mr. El-Mahdy's coworkers a full time position if she would agree to file an administrative complaint against Mr. El-Mahdy. The false complaint was filed.

23. After the historic tragedy of September 11, 2001, Ms. Collins ordered Mr. El-Mahdy to take part in an anger-management program, which she misrepresented that Mr. El-Mahdy would have to attend on his own time and would be responsible for the expenses thereof himself.

24. Without Mr. El-Mahdy's consent or knowledge, Ms. Collins instead had him evaluated for job-fitness duty by sending him to a psychiatrist, Ms. Joan Gerbasi (hereinafter "Ms. Gerbasi").

25. Subsequently, Mr. El-Mahdy was discharged, without an offer of unemployment, a severance package, or the possibility of taking family medical leave, under the false pretext of the examination.

26. Either during this time, or at some point thereafter, Ms. Collins and/or Ms. Gerbasi, and/or another agent of University Hospitals, revealed the results of the confidential and/or privileged material/medical records exam to non-privileged individuals/entities in contravention

6

of the agreement that Mr. El-Mahdy would be asked for consent prior to any such disclosure to anyone.

27. Ms. Collins was employed by University Hospitals at this time and refused to discuss the results of the examination with Mr. El-Mahdy.

28. Moreover, Ms. Collins and/or another agent of University Hospitals also released Mr. El-Mahdy's confidential and/or privileged material/medical records from an earlier emergency room visit without Mr. El-Mahdy's consent or a subpoena. Unauthorized and unprivileged release or sharing of nonpublic medical information constitutes a separate tort in Ohio. In Ohio, an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship. Prior authorization was absent herein. Moreover, a third party, Ms. Collins and University Hospitals can be held liable for inducing the unauthorized, unprivileged disclosure of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship. It is clear that Ms. Collins, Ms Straight and University Hospitals knew or reasonably should have known of the existence of the physician-patient relationship, they intended to induce the physician to disclose information about the patient or reasonably should have anticipated that their actions would induce the physician to disclose such information, and they did not reasonably believe that the physician could disclose that information to the defendant without violating the duty of confidentiality that the physician owed Mr. El-Mahdy.

29. As a direct and proximate result of the facts and circumstances which form the allegations contained herein, Mr. El-Mahdy suffered, and continues to suffer to date, with respect to his terms, conditions, and privileges, discriminatorily disparate treatment.

7

30. Mr. El-Mahdy also suffered, as a direct and proximate result of this discriminatorily disparate treatment, a loss of income and earning capacity, humiliation, damage to his reputation, and great pain and mental anguish.

## SECOND CAUSE OF ACTION
### Violation of Ohio's Fair Employment Practices Law
### Ohio Rev. Code Section 4112 et seq.
### Wrongful Discharge As Against University Hospitals
### Public Policy Tort

31. Paragraphs 1-30 are hereby incorporated by reference as if fully rewritten hereon, and in further support of his allegations, Mr. El-Mahdy further states the following:

32. A public policy against racial and/or nationality based discrimination exists in Ohio pursuant to Ohio Rev. Code Section 4112.02(A).

33. Defendants discharged Mr. El-Mahdy, and otherwise discriminated against him, without just cause, with respect to his compensation, terms, conditions or privileges of employment, because of his race, color, religion and national origin, and limited, segregated and/or classified his employment in a way which deprived him of employment opportunities, or otherwise adversely affect his status as an employee, because of his race, color, religion and national origin. As a direct result of Defendants' action, collective and/or otherwise, Defendants violated a clearly defined Ohio public policy, Greeley v. Miami Valley Maintenance Contractors, Inc. (1990), 49 Ohio St. 3d 228; Painter v. Graley (1994), 70 Ohio St. 3d 377. As such, Mr. El-Mahdy is entitled to this cause of action in addition to remedies available under Ohio Rev. Code Section 4112. Collins v. Rizkana (1995), 73 Ohio St. 3d 65; see also Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St. 3d 134. Mr. El-Mahdy has suffered damages which continue to accrue and for any and all back pay, front pay, compensatory and punitive damages by law.

8

including interest and attorneys' fees, made and provided. University Hospital's dismissal of Mr. El-Mahdy under the circumstances herein described would jeopardize such public policy.

34. Mr. El-Mahdy's termination/dismissal was motivated by conduct related to the public policy against racial and/or nationality based discrimination as set forth under Ohio Rev. Code Section 4112.02(A).

35. University Hospitals lacked overriding and legitimate business justification for such termination/dismissal.

### THIRD CAUSE OF ACTION
#### Tortuous Interference With Employment Relationship As Against University Hospitals and Margaret Straight

36. Paragraphs 1-35 are hereby incorporated by reference as if fully rewritten hereon, and in further support of his allegations, Mr. El-Mahdy further states the following:

37. Subsequent to Mr. El-Mahdy being wrongfully discharged from University Hospitals, Ms. Straight and/or another University Hospitals employee learned that Mr. El-Mahdy was seeking full and/or part-time employment with Kaiser.

38. Ms Straight and/or another University Hospital agent took affirmative action to interfere, and did in fact interfere, with the employment relationship between Mr. El-Mahdy and Kaiser.

39. As a direct result, Mr. El-Mahdy was deprived of his employment relationship with Kaiser, and suffered a loss of income and earning capacity, as well as permanent damage to his reputation, humiliation, and suffered great pain and mental anguish.

9

## FOURTH CAUSE OF ACTION
### Civil Conspiracy As Against Margaret Straight, Joan Gerbasi, Denise Collins, Bertha Stewart, Kaiser and University Hospitals

40. Paragraphs 1-39 are hereby incorporated by reference as if fully rewritten hereon, and in further support of his allegations, Mr. El-Mahdy further states the following:

41. After Mr. El-Mahdy was wrongfully discharged from University Hospitals, Margaret Straight and/or Denise Collins and/or Kaiser and/or Bertha Stewart and/or University Hospitals and/or Joan Gerbasi maliciously conspired for the purpose of denying Mr. El-Mahdy equal protections of the law.

42. Such conspiracy directly and proximately resulted in the denial of equal protection under the laws, and resulted in great harm to Mr. El-Mahdy as set forth under the Third and Fifth Causes of Action herein.

## FIFTH CAUSE OF ACTION
### Retaliation As Against Kaiser and Bertha Stewart

43. Paragraphs 1-42 are hereby incorporated by reference as if fully rewritten hereon, and in further support of his allegations, Mr. El-Mahdy further states the following:

44. Mr. El-Mahdy acted in a legally protected activity by bringing charges against University Hospitals and others.

45. Kaiser and Bertha Steward were aware that Mr. El-Mahdy had brought such charges against University Hospitals and others.

46. Knowing that Mr. El-Mahdy was exercising his rights by engaging in legally protected activity, Kaiser and Bertha Stewart took wrongful and adverse employment actions against Mr. El-Mahdy by ceasing calls to Mr. El-Mahdy for work and refused to hire him for a part-time or full-time position.

47. After releasing Mr. El-Mahdy from on-call employment under the false pretext of limited finances or budgetary concerns, Kaiser called into work numerous on-call employees and even hired additional individuals as part-time laboratory assistants and an on-call laboratory assistant.

48. In December, 2002, Mr. El-Mahdy was threatened with security by Bertha Stewart and was escorted outside of Kaiser's Parma facility. Defendants illegally retaliated against Mr. El-Mahdy by terminating his employment after he continuously complained to Defendants regarding discrimination and harassment at work. Such action violates the anti-retaliation provisions of Title VII of the Civil Rights Act. Such actin by Defendants were fraudulent, intentional and malicious, entitling Mr. El-Mahdy to punitive damages. Mr. El-Mahdy has suffered damages which continue to accrue and for any and all back pay, front pay, compensatory and punitive damages by law, including interest and attorneys' fees, made and provided.

49. As a direct and proximate result of Kaiser's and Ms. Stewart's retaliation, Mr. El-Mahdy suffered further loss of income and earning capacity, humiliation, damage to his reputation, and great pain and mental anguish.

## SIXTH CAUSE OF ACTION
### Title VII of the 1964 Civil Rights Act
### Title I of the 1991 Civil Rights Act

50. Paragraphs 1-49 are hereby incorporated by reference as if fully rewritten hereon, and in further support of his allegations, Mr. El-Mahdy further states the following:

51. Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., prohibits discrimination in employment on the basis of race, color, religion or national origin. The unlawful employment practices and employment discrimination complained of above were

11

intentional within the meaning of Section 1977(a)(2) and (b) of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a.

52. At all relevant times, all Defendants acted with malice and reckless indifference to the statutorily protected rights of Mr. El-Mahdy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., Title I of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a and other statutes.

53. As for his causes of action against all Defendants regarding their conduct herein alleged, intentionally, willfully and without justification, did deprive Mr. El-Mahdy of his rights, privileges and immunities secured to him by the Constitution and the laws of the United States, particularly his right to be free from unlawful employment practices and employment discrimination as provided by Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., and title I of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a, Mr. El-Mahdy has suffered damages which continue to accrue and for any and all back pay, front pay, compensatory and punitive damages by law, including interest and attorneys' fees, made and provided.

### SEVENTH CAUSE OF ACTION
Ohio's Aiding And Abetting Statute
Ohio Rev. Code Section 4112.02(J)

54. Paragraphs 1-53 are hereby incorporated by reference as if fully rewritten hereon, and in further support of his allegations, Mr. El-Mahdy further states the following:

55. Defendants aided, abetted, incited, compelled, or coerced the actions alleged herein, or obstructed or prevented any person from complying with Ohio Rev. Code Section 4112 et seq.;

56. Mr. El-Mahdy has suffered damages which continue to accrue and for any and all back pay, front pay, compensatory and punitive damages by law, including interest and attorney's' fees, made and provided.

WHEREFORE, Mr. El-Mahdy prays for judgment against Defendants University Hospitals of Cleveland, Kaiser Permanente, Margaret Straight, Denise Collins, and Bertha Stewart, jointly and severally. Mr. El-Mahdy has a remedy under Ohio Revised Code 4112.99. Mr. El-Mahdy respectfully requests compensatory damages on all counts in an amount in excess of Twenty Five Thousand Dollars ($25,000) and punitive damages on all counts in an amount in excess of Ten Million Dollars ($10,000,000), together with reasonable and appropriate back pay, front pay, reimbursement for lost wages, reinstatement, and costs herein incurred, attorney's fees, and all other relief that is just and proper.

Respectfully Submitted,

Jihad M. Smaili, Esq. (0069768)
Jihad M. Smaili, Esq., L.L.C.
1360 West 9th Street, Suite 310
Cleveland, Ohio 44113
(216) 685-9500
(216) 685-9685 (facsimile)
jihad@smaililaw.com

13